IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRISTOL UNIVERSITY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ACCREDITING COUNCIL FOR ) <br> INDEPENDENT COLLEGES AND ) <br> SCHOOLS, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 1:16-cv-307 (AJT/MSN) |

## MEMORANDUM OPINION

Plaintiff Bristol University ("Bristol") challenges the decision of defendant Accrediting Council for Independent Colleges and Schools ("ACICS") on March 18, 2016 to deny Bristol's application for renewal of its accreditation. On March 22, 2016, this Court entered a Temporary Restraining Order [Doc. No. 12] requiring ACICS to reinstate Bristol's accreditation, with conditions. On April 13, 2016, the Court held a hearing on Bristol's Motion for Preliminary Injunction [Doc. No. 17], following which it took the matter under advisement. For the reasons stated herein, the Court will preliminarily enjoin ACICS from suspending Bristol's accreditation pursuant to the decision dated March 18, 2016 of ACICS' Review Board or the Council Action dated December 22, 2015; provided, however, that Bristol's accreditation shall remain subject to ACICS' further review, evaluation, and decisions made in accordance with its *Accreditation Criteria*, applied in a manner consistent with this Memorandum Opinion. This action will also be stayed pending further Order of the Court, upon application of either party.

### I. BACKGROUND

Founded in 1991, Bristol is an educational institution in Anaheim, California that serves primarily underserved, low income, and international students. It offers one-, two-, and four-

year programs in business administration and certificate programs in legal studies and hospitality operations. ACICS is a nonprofit Virginia corporation recognized by the United States Secretary of Education as a national accrediting agency under the Higher Education Act, 20 U.S.C. §§ 1001 *et seq*. In California, where Bristol operates, accreditation is mandatory for an institution of higher education to lawfully operate.

### A. The Accreditation Process

When evaluating an institution for accreditation, ACICS conducts on-site visits to ensure compliance with certain criteria called the "Accreditation Criteria, Policies, Procedures, and Standards" (the "*Accreditation Criteria*"). The accreditation review framework is enumerated in Title II, Chapter 3 of the *Accreditation Criteria* governing "Council Actions." The overall process is summarized in the *Introduction*:

> When the Council has considered all of the information and reports submitted as a result of the accrediting process, it will make a judgment as to an institution's compliance with the *Accreditation Criteria*. The Council's decision is based on the extent of an institution's compliance. The judgment made is referred to as a "Council action." The actions which the Council may take are described in this chapter. Procedures available to institutions to challenge those actions and the maximum time frames for achieving final disposition of those actions by the Council also are explained. There are four general areas of Council actions: accreditation granted, accreditation deferred, accreditation denied, and accreditation withdrawn.
>
> If the Council determines that an institution is not in compliance with the *Accreditation Criteria*, it will take prompt adverse action against the institution, or it will require the institution to take appropriate action to bring itself into compliance with the *Accreditation Criteria* within a time frame specified by the Council after the institution has been notified that it is not in compliance. That time frame will not exceed the following:
>
> > (a) twelve months, if the longest program is less than one year in length;
> >
> > (b) eighteen months, if the longest program is at least one year, but less than two years in length; and
> >
> > (c) two years, if the longest program is at least two years in length.

> The above time frames may be extended at the sole discretion of the Council for good cause, including evidence that there has been significant improvement in the deficient area(s) and the applicable time frame does not provide sufficient time to demonstrate full compliance, e.g., significant improvement in completion or placement rates.

Sections of Title II, Chapter 3 describe the accreditation process in greater detail, including the procedures to be followed. Specifically, the Council may defer further consideration of an institution's accreditation if it determines that there is not sufficient information to make a decision for that purpose. *See* § 2-3-200 ("When Council determines there is insufficient evidence available to make a decision, they may defer action until a later date pending receipt of additional information."). In cases where ACICS defers action, "the Council will provide in writing the reasons for the deferral, state what the institution needs to provide with sufficient time for the institution to respond, and specify the response date." Moreover, "[b]ased on the nature and/or number of identified deficiencies, the Council may require attendance of key administrators at a workshop and/or consultation." *Id.* § 2-3-210. Because no substantive decision on accreditation is made by way of deferral, the *Accreditation Criteria* make clear that "[d]eferral is, in effect, 'no action at this time' and is not a negative action." *Id.*

Once the Council determines that an institution is not in compliance, presumably after the institution has had the opportunity to provide the requested information, the *Accreditation Criteria* set out a structured progression of requirements that may be imposed on the institution that provide opportunities for the institution to come into compliance. First, the Council will issue a "compliance warning" consisting of the following information and requirements:

> The institution *will be provided in writing* with the areas of noncompliance and will be required to demonstrate corrective action *for review by ACICS.*
>
> A show-cause directive or a denial action/suspension order may be issued by ACICS as the result *of this review* as described in Section 2-3-230 and 2-3-402. *Following receipt of a compliance warning,* the institution must bring itself into

compliance within the time frames specified in Title II, Chapter 3, or the institution will be subject to a final adverse action.

*Id.* § 2-3-220 (emphasis added). After the compliance warning and ACICS' review of the institution's demonstration of corrective action, a show-cause directive may be issued "[w]hen the Council determines that an institution is not in compliance, and is unlikely to become in compliance, with the *Accreditation Criteria*." *Id.* § 2-3-230. Finally, "[f]ollowing receipt of a show-cause directive, the institution must bring itself into compliance within the time frames specified in Title II, Chapter 3, or the institution will subject to final adverse action." *Id.*

### B. Bristol's Accreditation Process

ACICS first accredited Bristol in 1993, and Bristol maintained accreditation through 2011. In April 2012, Bristol received from ACICS a three-year grant of accreditation set to expire on December 31, 2015. In October 2014, Bristol submitted an application to ACICS to renew its accreditation upon expiration in December 2015. ACICS' review team evaluated Bristol during an on-site visit on May 14 and 15, 2015. By letter dated June 15, 2015, ACICS forwarded a report of that visit, "invite[d] [Bristol] to respond to this report before it takes formal action on your institution's application for accreditation" and indicated that Bristol would be notified of the Council's decision following its next meeting. Bristol submitted a response to the report in June or July 2015.[1] By letter dated August 20, 2015 (the "August 20 letter"), ACICS reported to Bristol that "the Council acted to . . . defer further action on its application for a new grant of accreditation" and outlined a process for further consideration of that application. The adequacy of that process and the notice to Bristol concerning that process lies at the heart of this case.

---

[1] It is unclear from the record whether Bristol submitted its response to ACICS' June 2015 report in June 2015 or July 2015. Bristol states that it submitted the response in July 2015. [Doc. No. 1 at 5]. ACICS states that Bristol submitted the response in June 2015. [Doc. No. 24 at 2]. This discrepancy is immaterial for the purposes of this Memorandum Opinion.

The August 20 letter advised that as a result of its review of Bristol's application for renewal of accreditation, ACICS found thirty-seven (37) "deficiencies"—or areas of noncompliance—that needed to be addressed based on the *Accreditation Criteria*. Those deficiencies covered the full array of Bristol's academic programs and administration. Many of those deficiencies were framed in terms of inadequate documentation or evidence. Others stated, however, that Bristol's program was, in fact, deficient in certain aspects, including such basic matters as unsatisfactory faculty qualifications to teach certain courses and an "MBA curriculum [that] does not qualitatively and quantitatively approximate the standards at other institutions."

The findings in the August 20 letter, on their face, raised serious questions as to whether Bristol could or should continue to operate as an academic institution. Nevertheless, ACICS advised Bristol that it had decided "to continue the current grant of accreditation through December 31, 2015 and to defer further action on the application for a new grant of accreditation until its December 2015 meeting pending receipt of the information described [in the letter]." It directed Bristol to provide the requested information no later than October 31, 2015. At the same time, however, and without a previously issued directive identified as a "compliance warning," ACICS directed Bristol "to show cause at the December 2015 meeting why its application for accreditation should not be denied,"[2] even though ACICS' decision to defer action was, under its *Accreditation Criteria*, "not a negative action" but an action taken because of a lack of sufficient information to make substantive judgments about accreditation. The August 20 letter also advised Bristol that (1) failure to provide all information requested by the Council may result in the denial of the its application for renewal of accreditation; (2) it was required to host an on-site consultation visit; and (3) it was also required to complete a draft

---

[2] In the August 20 letter, ACICS based its show-cause directive on "the large and varied amount of findings incurred at the institution during the on-site evaluation and the inability to clear these findings in the institution's response [to ACICS' June 15, 2015 report]."

5

"campus closure and teach-out plan" along with all applicable documentation by October 31, 2015. Finally, the letter advised that "[t]he Council is obligated to take adverse action against any institution that fails to come into compliance with the *Accreditation Criteria* within established time frames without good cause. Please consult the Introduction of Title II, Chapter 3 for additional information."

Following the August 20 letter, Bristol hosted the on-site consultation visit on September 22 and 23, 2015. On October 29, 2015, ACICS reported the results of that visit. Following its receipt of the October report, Bristol submitted in November 2015 its item-by-item response to ACICS' request for information in the August 20 letter. It does not appear that Bristol submitted a campus closure and teach-out plan.

ACICS considered Bristol's item-by-item response at its December 2015 meeting and by letter dated December 22, 2015, advised Bristol of the results of its review. In that letter, ACICS identified twenty-four unresolved deficiencies identified in the August 20 letter. However, rather than issue a compliance warning or provide time frames within which Bristol would be required to come into compliance, ACICS issued a "final decision" denying Bristol's application for renewal of accreditation pursuant to the show-cause directive, issued in the August 20 letter at the same time that ACICS acted to defer further action pending receipt of additional information.[3] Bristol appealed the Council's denial of its application to the Review Board, which set a hearing for March 18, 2016.

---

[3] Specifically, ACICS advised that its non-renewal decision was "final and will be published if the appeal notice and appropriate fee are not provided within ten days of your receipt of this notice." As part of that final decision, Bristol's accreditation was extended to January 31, 2016 in order to provide Bristol with time to make the necessary transition because of its loss of accreditation, which included creating a "Campus Closing and Teach-Out Application." Bristol was advised, however, that if Bristol appealed to ACICS' internal appellate body (the "Review Board"), its accreditation would continue through the completion of the appeal.

6

The parties filed briefs in support of their positions;[4] and the oral hearing before the Review Board occurred, as scheduled, on March 18, 2016.[5] Approximately ninety minutes after the hearing concluded, Bristol received an electronically transmitted letter from the Review Board affirming ACICS' decision to reject Bristol's request for renewal.[6] In its two-paragraph letter, the Review Board did not address the reasons for its decision or the arguments made by either party at the hearing. As a result of the Review Board's March 18, 2016 decision and pursuant to California law, Bristol suspended all classes immediately.

Bristol filed this action on March 21, 2016 [Doc. No. 1], at which time it moved for an emergency temporary restraining order seeking to enjoin ACICS from withdrawing Bristol's accreditation and allowing it to continue operating until its claims could be adjudicated on the merits. [Doc. No. 2]. By Order dated March 21, 2016, the Court continued the hearing on the TRO motion until the next day in order to give ACICS an opportunity to appear. [Doc. No. 5]. The hearing continued on March 22, 2016 with all parties present, and after further consideration

---

[4] On February 29, 2016, Bristol submitted its brief responding to the twenty-four areas of non-compliance cited in the December 22, 2015 letter. On March 10, 2016, ACICS' counsel submitted its brief; and on March 17, 2016, Bristol filed a supplemental brief. Bristol's supplemental brief did not take issue with the Council's findings with respect to the twenty-four accreditation violations, but rather reiterated its request for a six month period within which to come into compliance with the *Accreditation Criteria*.

[5] Bristol alleges that on February 18, 2016, certain of its executives had a telephone conversation with ACICS' Senior Manager for Policy and Compliance, during which Bristol asked whether it needed to retain counsel and ACICS' manager allegedly replied that counsel was unnecessary. [Doc. No. 1, ¶ 24]. Bristol further alleges that it retained counsel after it "reviewed the Council's submission and concluded that [the ACICS' manager] had given bad . . . advice regarding the lack of the need for legal counsel." [*Id.*, ¶ 27]. On March 14, 2016, Bristol's newly-retained counsel requested a continuance of the March 18 hearing before the Review Board in light of his recent retention, together with a proposed resolution of the appeal. [*Id.*, ¶¶ 28–30]. On March 15, 2016, the Review Board rejected that request on the grounds that Bristol had not justified its delay in retaining counsel, although it did grant Bristol leave to file a supplemental brief. [*Id.*, ¶ 31, Ex. D].

[6] Bristol alleges in its Complaint that "[b]efore the hearing, the University was advised that it typically took approximately two weeks for the Review Board to announce its decision on an appeal." [Doc. No. 1, ¶ 37].

7

of the parties' submissions and the argument of counsel, the Court granted Bristol's motion and entered a temporary restraining order requiring ACICS to reinstate Bristol's accreditation. [Doc. No. 12]. It also required Bristol to (i) post on its website a notification to students regarding Bristol's accreditation status, (ii) refrain from enrolling any new students pending the outcome of the litigation, and (iii) post a $1,500.00 security bond.[7] On March 25, 2016, Bristol filed its Motion for a Preliminary Injunction [Doc. No. 17] (the "Motion"). The Court held a hearing on the Motion on April 13, 2016, following which the Court took the matter under advisement.

## II. STANDARD OF REVIEW

### A.  Preliminary Injunction

Federal Rule of Civil Procedure 65 authorizes a federal court to issue temporary restraining orders and preliminary injunctions. In order to receive a preliminary injunction, the moving party must make a clear showing that (1) it is likely to succeed on the merits of its case; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of the equities tips in its favor; and (4) an injunction would be in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997); *see also Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013).

### B.  Review of Administrative Decision

There is a common law duty on the part of accrediting agencies to "employ fair procedures when making decisions affecting their members." *Prof'l Massage Training Center, Inc. v. Accreditation Alliance of Career Schs. and Colls.*, 781 F.3d 161, 169 (4th Cir. 2015) (citing *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 534–35 (3d Cir. 1994)). Moreover, it is well settled that "elementary principles of administrative law call for significant, though not total, deference to decisionmaking by accreditation agencies." *Id.*

---

[7] The Court also directed the parties to meet with the Magistrate Judge to discuss a resolution, which the parties attempted beginning on March 30, 2016, without success.

(citing *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705 (6th Cir. 2006); *Wilfred Acad. of Hair & Beauty Culture v. S. Ass'n of Colls. & Schs.*, 957 F.2d 210 (5th Cir. 1992)). However, as the Fourth Circuit has stated, "[t]his is not to say however that accreditation agencies are wholly free of judicial oversight. They, like all other bureaucratic entities, can run off the rails." *Prof'l Massage*, 781 F.3d at 169. Accordingly, the Court's role is not to assess the correctness of ACICS' decision, but whether it "employ[ed] fair procedures" in rendering that decision. *Id.*

In discharging its role in reviewing the decision of the agency, "[t]he most familiar standard of review is one in which the court is authorized to consider 'only whether the decision of an accrediting agency . . . is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence.'" *Id.* at 171 (quoting *Cooley*, 459 F.3d at 712). An administrative decision is arbitrary when, based on a consideration of the relevant factors, the Court finds that there has been an "error of judgment." *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). As the Supreme Court has recognized, "[a]lthough this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

Therefore, "[u]nder this standard, courts are 'not free to conduct a *de novo* review or to substitute their judgment for the professional judgment of the educators involved in the accreditation process.'" *Prof'l Massage*, 781 F.3d at 171 (quoting *Wilfred*, 957 F.2d at 214); *see also Peoria Sch. of Bus., Inc. v. Accrediting Council for Continuing Educ. & Training*, 805 F. Supp. 579, 583 (N.D. Ill. 1992) ("[f]ederal review of the actions of a voluntary association with respect to its members is limited to consideration of whether the decisions are 'arbitrary and unreasonable' and whether they are supported by 'substantial evidence'"). In short, "the

9

standards of accreditation are not guides for the layman but for professionals in the field of education . . . courts are not free to substitute their judgment for the professional judgment of the educators involved in such decisions." *Prof'l Massage*, 781 F.3d at 171–72 (quoting *Wilfred*, 957 F.2d at 214); *see also Parsons Coll. v. N. Cent. Ass'n of Colls. & Secondary Schs.*, 271 F. Supp. 65, 73 (N.D. Ill. 1967)).

## III. ANALYSIS

### A. Irreparable Harm

As it stated during the TRO hearing, the Court easily concludes that Bristol has made a clear showing that it will suffer irreparable harm if the preliminary injunction is not granted. Under California law, Bristol may not operate without accreditation, and therefore a loss of accreditation would necessarily lead to the immediate closing of the institution.

### B. Balance of the Equities

In considering the "balance of the equities" prong of the analysis, the Court is obligated to make "an assessment of the harms facing both parties." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 708 (E.D. Va. 2012). ACICS argues that the balance of equities tips in its favor because "[f]or accreditation to have value, it must be credible and it must represent excellence. If ACICS is forced to accredit Bristol . . . all of ACICS' accredited institutions will suffer by the fact that accreditation . . . will have [] less value." [Doc. No. 24 at 18–19]. While the Court recognizes ACICS' substantial interest in maintaining the value and integrity of its accreditation process, it concludes that the immediacy and permanency of the injury that Bristol would necessarily sustain in the absence of injunctive relief, and the need for additional administrative procedures to assess Bristol's application for accreditation under ACICS' own procedures, tip the balance of equities in Bristol's favor. In that regard, ACICS

10

had, in effect, already made this same judgment when it extended Bristol's accreditation through the appeals process following Council action on December 22, 2015.

### C. Public Interest

Given the Court's finding below as to the inadequacy of the process employed by ACICS, and the effect that ACICS' negative accreditation decision will necessarily have on the students currently enrolled at Bristol, the Court must conclude, as it did during the TRO hearing, that the public interest is served by entering the preliminary injunction to maintain the status quo pending further proceedings before ACICS.

### D. Likelihood of Success on the Merits

In determining whether Bristol has demonstrated a likelihood of success on the merits of its claim, the Court must assess whether, based on the current record, it appears that Bristol was likely denied due process in connection with ACICS' decision to deny Bristol's application for accreditation renewal. Alternatively stated, the issue for the Court is whether ACICS acted arbitrarily or abused its discretion in arriving at that decision. It is clear that ACICS was understandably concerned about the magnitude of Bristol's non-compliance, and its precipitous and systemic decline in compliance since its last accreditation review and approval. Nevertheless, the Court also finds that Bristol has made a clear showing that ACICS failed to abide by its own procedures for assessing Bristol's application for accreditation renewal, specifically a failure to proceed in accordance with the structured progression of actions specifically required under the *Accreditation Criteria*.

The *Accreditation Criteria* state as a general governing principle that ACICS will make a judgment as to an institution's compliance "[w]hen the Council has considered all of the information and reports submitted as a result of the accrediting process." *Accreditation Criteria*, Title II, Chapter 3, *Introduction*. Here, on August 20, 2015, after reviewing Bristol's

11

submissions, ACICS decided to defer action pending receipt of additional information. That deferral constituted a decision that, in ACICS' own words, "there is insufficient evidence available to make a decision" or alternatively stated, that no action was being taken at that time. *Id.* § 2-3-210 ("[d]eferral is, in effect, 'no action at this time' and is not a negative action"). ACICS provided, as required, a deadline for the submission of information that the Council deemed necessary to make a decision—October 31, 2015—and issued certain directives that pertained to its deferral decision, including that Bristol host an on-site consultation visit. Under the *Accreditation Criteria*, once ACICS received and reviewed those submissions, it would make a judgment as to Bristol's compliance. If ACICS determined that Bristol was not in compliance, it was then required to issue a compliance warning, in writing, which described the areas of non-compliance and directed that Bristol "demonstrate corrective action for review by ACICS" that "bring[s] itself into compliance within the time frames specified in Title II, Chapter 3" or else "be subject to a final adverse action." *Id.* § 2-3-220. If after its review of Bristol's corrective action ACICS determined that Bristol "is not in compliance, and is unlikely to become in compliance, with the *Accreditation Criteria*, the institution will be provided in writing with the areas of noncompliance and will be invited to 'show cause' why its accreditation should not be suspended or otherwise conditioned." *Id.* § 2-3-230.

Rather than follow these procedures, ACICS appears to have ignored its rationale for deciding to defer action, eliminated the compliance warning step, and advanced directly to the show-cause stage without giving Bristol clear deadlines for compliance, as opposed to providing additional information. In effect, ACICS first determined that it did not have sufficient information to make the required judgments concerning whether Bristol's application for accreditation should be approved, but nonetheless proceeded to issue a show-cause directive based on substantive, negative judgments, without the interim steps required under the

12

*Accreditation Criteria*, including the issuance of a compliance warning and a clear deadline for coming into compliance, which, given the length of Bristol's academic programs, could have been set under the *Accreditation Criteria* as far off as two years.[8]

ACICS' failure to comply with its own internal review procedures is compounded by the lack of a record sufficient to determine what specific issues the Council or the Review Board considered and decided, and on what basis it decided those issues. For example, ACICS did not explain in its notice of Council action on December 22, 2015 why it concluded, if it did, that Bristol had failed to come into compliance "within established time frames without good cause"; that Bristol would be unlikely to "bring itself into compliance within the time frames specified in Title II, Chapter 3"; or that no further opportunity to come into compliance was warranted.[9]

The Review Board's decision on Bristol's appeal suffered from the same defects. The Review Board did not provide any rationale in support of its position, either in the form of a written opinion, or an oral ruling during the hearing. For these reasons, the Court is simply unable to assess whether or on what basis ACICS exercised its discretion. In short, even had ACICS complied with its own procedures and properly issued a show-cause directive, the Court cannot conclude from the record why ACICS decided not to renew Bristol's accreditation without giving Bristol a compliance warning or any further opportunity to come into compliance.

---

[8] The August 20 letter does state that "the Council is obligated to take adverse action against any institution that fails to come into compliance with the *Accreditation Criteria* within established time frames without good cause." Given that no clearly designated deadline was set for coming into compliance, it is unclear what would constitute "within established time frames" in this specific case, other than those maximum time frames set forth in Title II, Chapter 3.

[9] In its brief in opposition to the Motion for Preliminary Injunction [Doc. No. 24], ACICS has submitted declarations affirming that it considered these issues. [*Id.*, Exs. A–C]. However, there is nothing in the record of ACICS' actual proceedings with respect to Bristol's application which reflects such consideration, or ACICS' reasoning in deciding those issues adversely against Bristol.

Under the *Accreditation Criteria*, the critical questions before the Council and the Review Board leading up to and under a "show-cause directive" were not only whether Bristol was in non-compliance, but whether Bristol failed to come into compliance "within the established time frames without good cause" and whether it was "unlikely to become in compliance." *See* § 2-3-230 (a show-cause directive may be issued "[w]hen the Council determines that an institution is not in compliance, and is unlikely to become in compliance, with the *Accreditation Criteria*"). Here, those "established time frames" were never set following the required compliance warning, which was never issued; and it is unclear on what basis ACICS imposed final adverse action as it did. In any event, the record is inadequate for the Court to meaningfully review the reasons for ACICS' suspension of Bristol's accreditation.

For the above reasons, the Court concludes that Bristol has made a clear showing that it is entitled to a preliminary injunction with respect to ACICS' decision to deny its application for renewal of its accreditation. The Court will therefore preliminarily enjoin ACICS from suspending Bristol's accreditation pursuant to the Review Board's decision dated March 18, 2016 and related Council action. The preliminary injunction shall issue on the same terms and conditions already imposed under the Court's Temporary Restraining Order [Doc. No. 12], provided, however, that Bristol shall be permitted to operate as it did before the suspension of its accreditation on March 18, 2016, including the ability to enroll new students who are provided the appropriate notice concerning the status of Bristol's accreditation.

Given the procedural inadequacy of ACICS' review process that resulted in its decision to deny Bristol's request to renew its accreditation, the Court finds that no purpose would be served by continuing judicial consideration of this matter at this time. The Court will therefore stay this action, pending further Order of the Court, upon the application of either party. In the interim, Bristol's accreditation shall remain subject to ACICS' further review, evaluation, and

decisions made in accordance with its *Accreditation Criteria*, applied in a manner consistent with this Memorandum Opinion.

## IV. CONCLUSION

Based on the foregoing, the Court finds and concludes that Bristol has made a clear showing that it is entitled to a preliminary injunction enjoining ACICS from suspending its accreditation. Accordingly, Bristol's Motion for Preliminary Injunction [Doc. No. 17] will be granted. An appropriate Order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 25, 2016